IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRAVELERS CASUALTY AND          *
SURETY COMPANY OF AMERICA       *
                                *
v.                              *    Civil Action No. WMN-08-2901
                                *
BALTIMORE CONTRACTORS, LLC      *
et al.                          *
                                *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

On November 11, 2010, Plaintiff Travelers Casualty and
Surety Company of America (Travelers) filed a Motion for Summary
Judgment as to Defendants Baltimore Contractors, LLC (BCL), Lyle
and Linda Aaby, Albert and Joy Marlowe, and Steven and Cynthia
Sowash.  ECF No. 56.  On that same date, Travelers filed a
Motion for Default Judgment as to Defendant BCL.  ECF No. 57.
The Sowashes, proceeding pro se, filed an opposition to
Travelers' motion.  The Aabys, represented by counsel, also
filed an opposition to the motion, which included a motion to
strike the affidavit submitted by Travelers in support of its
motion as well as a cross motion for summary judgment.  ECF No.
66.  The Marlowes have not responded to the motion.  As the
result of either the expiration of time or the completion of
briefing, all of the pending motions are now ripe.  Upon review
of the submissions and the applicable case law, the Court

determines that no hearing is necessary, Local Rule 105.6, and

that the Aaby's motion to strike will be granted in part and

denied in part and each of the remaining motions will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As described by Travelers, this action is at its core a

simple contract action.  The contract at issue is a General

Agreement of Indemnity (GAI) dated September 5, 2000, and signed

by each of the Defendants.  Compl. Ex. 1.  The events

surrounding the execution of the GAI, the content of the GAI,

and the relevant events that transpired after its execution are

as follows.[1]

Plaintiff Travelers issued several performance and payment

bonds as a surety for Defendant BCL which was, at all times

relevant, a Maryland limited liability company that engaged in

major commercial construction projects.  During the period

immediately prior to September 2000, the only two members of the

LLC were Leonard Frankil and John Rouse.  In order to create an

opportunity for some of BCL's employees to obtain an ownership

interest in BCL, "An agreement providing for the admission of

---

[1] Although this action has been pending for over two years, it
appears that the parties have engaged in very little factual
discovery as they have focused most of their attention on
resolving the dispute through settlement rather than through
litigation.  This is certainly commendable but, as a result, the
factual development of the case, as reflected in the briefing of
these motions, is somewhat sparse.

certain employees as New Members to Baltimore Contractors LLC"
(New Members Agreement) was drafted.  Aaby Ex. 1.  Under this
agreement, employees Lyle Aaby, Salvatore Manfre, Melvin Kencel,
Henry Berliner, Albert Marlowe and Steve Sowash, were given
ownership interest in BCL of between 7% and 16% each.  The New
Members Agreement also created a Management Board initially made
up of Frankil, Rouse, Aaby, Manfre and Kencel.  Id. ¶ 4(a).

As part of this restructuring, the new members, along with
each of their wives, were required to sign the GAI as
Indemnitors, which they all did.  The GAI is broad and sweeping,
providing that:

> [t]he Indemnitor[s] shall exonerate, indemnify and
> save [Travelers] harmless from and against every
> claim, loss, damage, demand, liability, cost, charge,
> suit, judgment, attorney's fee, and expense which
> [Travelers] incurs in consequence of having executed,
> or procured the execution of such Bonds.  Expense
> includes the cost of procuring or attempting to
> procure release from liability, or in bringing suit to
> enforce this Agreement against any Indemnitor.

GAI, ¶ 3.

In a paragraph addressing "Claim Settlement," the GAI
provided that:

> [Travelers] shall have the right, in its sole
> discretion, to determine for itself and the Indemnitor
> whether any claim or suit brought against [Travelers]
> or the Indemnitor upon any such Bond shall be paid,
> compromised, settled, defended or appealed, and its
> decision shall be binding and conclusive upon the
> Indemnitor.  An itemized statement thereof sworn to by

> an employee of [Travelers] or a copy of the voucher of payment shall be prima facie evidence of the propriety and existence of the Indemnitor's liability. [Travelers] shall be entitled to reimbursement for any and all payments made by it under the belief that it was necessary or expedient to make such payments.

Id. ¶ 4.

In the event that BCL were to default on a contract for which Travelers had issued a bond, the GAI provided for the following remedies.  Travelers had a right, at its sole discretion, to:

> (A) Take possession of the work under any Contract and to complete said Contract, or cause, or consent, to the completion thereof;
>
> (B) Take possession of the Indemnitor's equipment, tools, machinery, vehicles, materials, office equipment, books, records, documents, and supplies at the site of the work or elsewhere and utilize them for the completion of the work under the Contracts without payment for such use;
>
> (C) Assert or prosecute any right or claim in the name of the Indemnitor and to settle any such right or claim as [Travelers] sees fit;
>
> (D) Execute in the name of the Indemnitor any instruments deemed necessary or desirable by [Travelers] to: (a) provide [Travelers] with title to asset, (b) take immediate possession of Contract funds whether earned or unearned, (c) collect such sums as may be due Indemnitor and to endorse in the name of the Indemnitor, and (d) collect on any negotiable instruments;
>
> (E) Take possession of the Indemnitor's rights, title and interest in and to all Contracts, subcontracts let and insurance policies in connection therewith;

> (F) Be subrogated to all the rights, remedies,
> properties, funds, securities and receivables of the
> Indemnitor on said Contract or any other contract of
> Indemnitor and have the right to offset losses on any
> Contract or Bond against proceeds, funds, or property
> due from another contract or Bond.

Id. ¶ 6.

Finally, in the last provision of the GAI that is particularly relevant to this dispute, the GAI allowed for an Indemnitor to terminate his or her obligations under the agreement under certain conditions. Under Paragraph 13 of the GAI, the Indemnitors were permitted to terminate their participation in the agreement by giving notice to Travelers, but that termination would only have effect as to bonds issued after the Termination Date. Once an Indemnitor gave notice, the termination became effective 30 days from the date that Travelers received that notice. Id. ¶ 13.

Defendants note that, when the New Members Agreement and the GAI were executed, BCL had in excess of $3.5 million in Members' capital and, in the opinion of Defendants, "was financially strong and in an excellent position to succeed in the future." See Aaby Aff. ¶ 4. Shortly after the restructuring, however, on March 15, 2001, Leonard Frankil withdrew $1,450,000 from BCL. Also in 2001, BCL suffered a net loss of $421,128.00. Id. ¶ 5. As a result of these events, the Members' capital fell to $1,484,758.00 as of June 30, 2001.

Around that same time, Leonard Frankil took over the management of BCL, informing the New Members that he was no longer bound by the decisions of the majority of the Management Board.  Aaby Ex. 3, Aug. 21, 2001, letter from Paul Walter, Leonard Frankil's attorney, to Steven Sowash.[2]

Defendants contend a condition for the issuance of any new payment and performance bonds by Travelers was that the Members' capital be in excess of $2,000,000.  The source of that condition is not entirely clear from the current record, but the condition is referenced in several documents.  See id. (stating "[i]n accordance with the statement provided to [BCL's] bonding company and others by its treasurer, it has now been confirmed that as of June 30, 2001, the Members' capital was $1,484,758.00, significantly less than the required $2,000,000."); Sowash Ex. E,[3] "Amended and Restated Operating

---

[2] In their briefing, the Aabys appear to have confused their Exhibit 2 with their Exhibit 3.  The Walter letter is referenced in the Aabys' opposition and counter motion as Exhibit 2 but is attached as Exhibit 3.  What the Aabys describe as a photocopy of a transmittal to Travelers and reference in their briefing as Exhibit 3, see ECF No. 66 at 3, appears to be attached as Exhibit 2.

[3] Travelers challenges the evidence submitted by the Sowashes (who are proceeding pro se in this litigation) because the documents submitted were not accompanied by a sworn affidavit. There are some evidentiary issues related to these documents and, standing alone, they might not suffice to create genuine issues of material facts in this action.  The material facts which these documents support, however, are supported by other

Agreement of [BLC]" (defining the "Base Line Capital Structure" as "[t]hat amount of capital required by the bonding company issuing payment and performance bonds for [BCL] in order to achieve or maintain [BCL's] bonding capacity" and stating that "[t]he Base Line Capital Structure is now $2,000,000"). Defendants also contend that Travelers was made aware that BCL's Members' capital had fallen below the amount required for the issuance of additional bonds.  See Aaby Ex. 3, supra; Aaby Ex. 2 (September 7, 2001, transmittal with June 30, 2001, Balance Sheet attached);[4] Sowash Ex. B, Oct. 11, 2001, letter from Leonard Frankil to Steve Sowash (stating, "[i]t has now been confirmed that as of June 30, 2001, the Members' capital is significantly less than $2,000,000.00, and our working capital had also dropped dramatically.  I am, as is our bonding company, deeply concerned.").

Despite the compromised financial condition of BCL, Travelers continued to issue bonds on new construction contracts.  On July 20, 2001, Travelers issued a performance bond for the New Dayton Maintenance Facility in Howard County,

---

evidence in the record and the Sowash materials are referenced here by the Court solely for the purpose of providing a fuller narrative of the events.  Travelers does not challenge the factual accuracy of any of the materials submitted by the Sowashes.

[4] See n. 2.

Maryland.  On January 5, 2002, Travelers issued a performance bond for the Abbottston/ Stadium Elementary School Project in Baltimore, Maryland.

In February of 2002, Steve Sowash resigned his position with BCL.  Although it was his belief that the New Member Agreement and the GAI had been nullified by Frankil's taking over the management of BCL from the Management Board, on the advice of a co-worker, the Sowashes sent notice to Travelers that they were terminating their participation in the GAI. Travelers received that notice on March 21, 2002, and, on that same date, Travelers sent a letter to the Sowashes informing them that they were relieved from liability for any bond issued after April 20, 2002, but remained liable for any bond issued prior to that date.  Sowash Ex. D.

Shortly thereafter, Travelers issued two additional bonds for BCL contracts.  On September 25, 2002, Travelers issued a performance bond for the NGIC Munitions' Storage Facility at Aberdeen Proving Grounds.  On November 27, 2002, Travelers issued a performance bond for the Fire Burn Building in College Park, Maryland.

In March 2003, Aaby was asked to leave BCL and on March 7, 2003, he resigned.  On March 13, 2003, he and his wife sent

notice to Travelers that they had terminated their individual liability under the GAI.

BCL eventually defaulted on the four contracts mentioned above and for which Travelers had issued bonds.  As a result of these defaults, claims began to be made against Travelers under the bonds.  Beginning in December of 2003 and continuing to the present, Travelers has made payments on these claims under the bonds.  At the time that the Complaint was filed, Travelers asserted that that it had incurred losses totaling $4,366,543.30 by reason of its execution of the bonds.  Compl. ¶ 23.

While some of the asserted losses that Travelers now seeks to recover resulted from the payment of claims to vendors or the settlement of lawsuits, or the payment of attorneys' fees, a significant portion of the loss - in fact, over $3.5 million of the asserted loss - went out as part of a financing arrangement between Travelers and BCL.  At some point in mid-2004, a joint trust fund was established into which financing was provided by Travelers on a request-by-request basis submitted by BCL. According to Travelers, this financing "was utilized by [BCL] to cover its operating costs such as rent, utilities, insurance premium, salaries and benefits for employees, both those working in the home office and those stationed on Projects, and for Project related costs, such as subcontractor and supplier

invoices."  Aff. of Timothy Snyder ¶ 7.  Travelers represents

that it "periodically reviewed and audited" BCL's use of the

trust fund monies to ensure that they were used only on the

bonded projects "or for general overhead type expenses."  Id.

After an unsuccessful demand for payment from BCL and the

individual signatories of the GAI, Travelers filed the instant

action seeking recovery of the $4,366,543.30 in losses, as well

as a declaratory judgment that Defendants are jointly and

severally obligated to indemnify Travelers for any future losses

sustained by reason of execution of the bonds.  In the

Complaint, Travelers acknowledges that the Sowashes' liability

does not extend to losses under the two bonds issued after the

effective date of the termination of their participation in the

GAI.  Since the filing of this action, Travelers has recovered

at least $392,500.00 in settlements with several of the

individual Defendants named in this action: $260,000 from John

Rouse, $65,000 from Melvin Kencel, $37,500 from Kimberly Rouse,

and $30,000 from Janet Manfre.[5]  Travelers has also voluntarily

dismissed Margaret and Henry Berliner, ECF No. 55, but there is

no indication in the record of any credit for payments from the

Berliners.

---

[5] Travelers also recovered $245,000.00 in the bankruptcy
proceedings of an entity related to BCL.

Relying almost exclusively on the affidavit of one of its Bond Claim Executives, Timothy Snyder, and an attached spreadsheet that sets forth in the most general of terms the payments that have been made on the bonds, Travelers has moved for summary judgment against the Aabys, Sowashes, and Marlowes for the remaining $3,706,771.81 in losses it asserts it incurred in connection with the bonds. The Aabys move to strike that affidavit on the grounds that it was not made on personal knowledge, contains impermissible hearsay, and constitutes expert opinion evidence from an expert not previously disclosed in discovery. Were the Court to strike the affidavit, the Aabys contend that Travelers would have no basis for its claims, that Travelers' motion for summary judgment should be denied, and that the Aabys' counter-motion should be granted. In opposing Travelers' summary judgment motion, the Aabys raise two additional arguments: (1) that Travelers' issuance of bonds at a time that Travelers knew that BCL was severely undercapitalized discharged theirs and the other indemnitors' obligations under the GAI, and (2) that the extension of financing to BCL was outside the scope of remedies provided for in the GAI.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when there is no genuine issue

as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In Anderson v. Liberty Lobby, Inc., the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  Id. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir. 2005).  The opponent, however, must bring forth evidence upon which a reasonable fact finder could rely. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material

fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." Pension Benefit Guar. Corp. v. Beverley, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing Pine Ridge Coal Co. v. Local 8377, UMW, 187 F.3d 415, 422 (4th Cir. 1999)).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted); see also havePower, LLC v. Gen. Elec. Co., 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983)). The court reviews each motion under the familiar standard for summary judgment, supra. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

## III. DISCUSSION

Before addressing the summary judgment motions, the Court must briefly address the Aaby's motion to strike. Were Trevelers' motion a typical summary judgment motion, Snyder's

affidavit, or at least large portions of it, would be stricken in its entirety for all of the reasons cited by the Aabys. First, most of Snyder's testimony clearly is expert opinion testimony, as he repeatedly opines as to the reasonableness of payments made by Travelers.  See, e.g., Snyder Aff. ¶ 11 (opining in a conclusory manner that a settlement reached with particular vendor "was evaluated and settled based upon the lack of defenses thereto and was reasonable").  Furthermore, as a "Bond Claim Executive" for Travelers' Recovery Management Unit, Snyder would appear to be an employee of Travelers whose duties regularly involve giving expert opinion and, thus, under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, he should have been identified as an expert and Travelers should have provided a written report of his opinions in discovery.

The amount of detail provided in the affidavit and in the accompanying spreadsheet would also be woefully inadequate to support a typical summary judgment motion.  The spreadsheet barely provides the nature of the payments made and provides no supporting documentation.  Most expenses are identified with nothing more than "Employee Travel," "Damages-Payments," or "Salvage."  Furthermore, at least some of the information in the affidavit is clearly hearsay.  See, e.g., id. ¶ 7 (recounting that requests for financing were made to a "colleague").

In arguing that the Snyder Affidavit is admissible testimony and the attached spreadsheet is admissible and adequate evidence, Travelers points to Rules 803(6) and 1006 of the Federal Rules of Evidence.  Rule 803(6) provides a hearsay exception for "Records of Regularly Conducted Activities" where "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Although the Court does not doubt that the records relied upon by Snyder are business records kept in the regular course of business, he does not so state in his affidavit.  Rule 1006 allows for the presentation in the form of a chart or summary of "voluminous writings, recordings, or photographs which cannot conveniently be examined in court."  The Court is less certain that this rule would apply to the documents relied upon by Snyder but,

regardless, Snyder makes no representation that they are too voluminous to have been produced.

As to the failure to identity Snyder as an expert witness, Travelers makes no argument that he is not, in fact, an expert. Instead, Travelers relies on the provision in that GAI that permits "an itemized statement thereof sworn to by an employee of [Travelers]" to function as "prima facie evidence of the propriety and existence of the Indemnitor's liability."  GAI ¶ 4.  Courts have allowed similar language to create a burden shifting framework whereby the sworn statement of an employee of the surety shifts the burden to the indemnitor to rebut the reasonableness of the expenses.  See, e.g. Spirtas Co. v. Insur. Co. of State of Pa., 555 F.3d 647, 654 (8th Cir. 2009).  Clauses such as this are intended to aid the surety's ability to prevail on a summary judgment motion.  Far West Ins. Co. v. J. Metro Excavating, Inc., Civ. No. 07-11, 2008 WL 859182 at *14 (N.D. Ind. March 28, 2008).

That provision allowing for "an itemized statement thereof" to substitute for more standard forms of proof, however, applies only to the payment or settlement of claims or suits brought against Travelers or the Indemnitors.  See GAI, ¶ 4 (the complete text of which is quoted supra).  There is no provision in the GAI that would permit Travelers to use this shortcut

method to establish the fact or reasonableness of expenses incurred in association with its financing arrangement with BCL. As mentioned above, it is the financing of BCL that composes the vast majority of Travelers' claims.

Thus, the Snyder Affidavit and accompanying exhibits must be struck except as they relate to the payment, compromise, settlement, defense, or appeal of any claim or suit brought against Travelers or the Indemnitors.

Turning to the merits of the summary judgment motions, the Court concludes that, under the current record, neither side is plainly entitled to judgment in its favor as a matter of law on any portion of Travelers' claim.  While the Snyder Affidavit might create a prima facia case as to the settlement or payment of actual claims, even as to that portion of the asserted loss, Defendants have raised a genuine issue of material fact as to whether Travelers' issuance of the underlying bonds with knowledge of BCL's compromised financial condition was sufficient to release Defendants from liability.  It is well established that any act on the part of an indemnitee which materially increases the risk, or prejudices the rights of the indemnitor, will discharge the indemnitor under a contract of indemnification to the extent of the prejudice.  Republic Inc. v. Prince George's County, 608 A.2d 1301, 1305 (Md. Ct. Spec.

App. 1992); see also United States Fid. & Guar. Co. v. Hathaway,
394 S.E.2d 764, 768 (W. Va. 1990) (holding it was a genuine
issue of material fact as to whether surety's issuance of
performance bonds to corporation substantially prejudiced
indemnitor who only agreed to act as an indemnitor when
contractor was a sole proprietorship); General Insurance Company
of America v. Fleeger, 389 F.2d 159, 161 n.3 (5th Cir. 1968).

As mentioned above, the source of the requirement that BCL
maintain $2,000,000 in Members' capital as a condition for the
issuance of new bonds is not entirely clear.  Nonetheless, there
is evidence in the record of the existence of such a condition.
There is also evidence in the record that Travelers was informed
of the drop in Members' capital.  Beyond the failure of that
expressed condition, a trier of fact could conclude that the
substantial change in the financial condition of BCL was
sufficient to materially increase the risk to indemnitors beyond
that which they undertook in signing the GAI.  Thus, even as to
the payments directly related to claims against Travelers or the
Indemnitors, the Court finds that Travelers is not entitled to
summary judgment at this juncture.

As to the claims premised on the financing provided to BCL,
the Court finds that neither Travelers nor Defendants have
presented evidence with their motions sufficient to support the

entry of summary judgment in that parties' favor.  The GAI is
arguably broad enough to encompass such payments.  Although the
financing of the principal is not identified as one of the
possible remedies in the event of default, see GAI ¶ 6, the GAI
does provide that the Indemnitors "shall exonerate, indemnify
and save [Travelers] harmless from and against every claim,
loss, damage, demand, liability, cost, charge, suit, judgment,
attorney's fee, and expense which [Travelers] incurs in
consequence of having executed, or procured the execution of
such Bonds."  GAI ¶ 3.[6]  The financing provided by Travelers
might be considered a "cost" incurred in consequence of
executing the Bonds.

　　　To be recoverable, however, payments must be "reasonable."
Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co., 844
A.2d 460, 473 (Md. 2004) (quoting with approval Harford v.
Tanner, 910 P.2d 872, 881 (Kan. 1996), for the proposition that
"'the implied covenant of good faith requires a surety seeking

---

[6] Travelers erroneously cites this language as a part of
Paragraph 4 and melds it into a single sentence with language
from Paragraph 4 to the effect that Travelers is "entitled to
reimbursement for any and all payments made by it under the
belief it was necessary and expedient."  ECF No. 70 at 5
(emphasis added by Travelers).  As explained above, the
expansive language of Paragraph 4 is relevant only to "Claim
Settlement," not financing of the principal.

indemnification to show that its conduct was reasonable'").[7]
Snyder nowhere directly states that the amounts provided to BCL
in financing were "reasonable," although he does opine that
"[w]ithout Travelers' financial assistance, [BCL] would have had
no choice but to file for bankruptcy, thus, Travelers' decision
to provide financing was done to mitigate its losses on [the
bonds]." Snyder Aff. ¶ 7. Lyle Aaby opines in his affidavit
that, with regard to the financing, he and his wife "do not
agree that any of the costs paid for [BCL's] expenses or for any
other expenses are fair and reasonable." Aaby Aff. ¶ 16. Not
only do these opinions directly conflict on a material issue,
but the opinions also lack persuasive force in that the
reasonableness vel non of the financing calls for an expert
opinion and neither Snyder nor Aaby have been identified as
experts. Thus, the cross motions for summary judgment must be
denied as to this aspect of Travelers' claim as well.

## IV. CONCLUSION

For these reasons, the Court will grant in part and deny in
part the Aaby's motion to strike the Snyder affidavit. It shall

---

[7] Implying that its claims might not be subject to the standard
adopted in Atlantic Contracting, Travelers notes that "[n]either
this Court nor the Fourth Circuit have expressly adopted the
Atlantic Contracting revised standard." ECF No. 56 at 9. In
deciding a contract claim arising out of a Maryland contact,
however, this Court is of course bound to follow Maryland law as
announced by Maryland's highest court.

be struck to the extent it goes beyond matters related to the payment, compromise, settlement, defense, or appeal of any claim or suit brought against Travelers or the Indemnitors.  The Court will deny the motions for summary judgment filed by Travelers and the Aabys.  Finally, because Travelers has failed to establish the scope of the Indemnitors' liability, the Court will also deny Travelers' motion for entry of default judgment against Defendant BCL.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 31, 2011